Good morning. I'm pleased to court Floyd Shebley appearing on behalf of plaintiff and appellant Gary Mercer. This is also a social security case involving the opinions of a couple of doctors. However, I think it's a good deal simpler than the one you just heard. In this case, the ALJ had two opinions indicating quite clearly that the claimant plaintiff was disabled. One from a long-time attending doctor and one from a well-qualified orthopedic surgeon who had over 30 years of practical experience, including surgical experience. The treating doctor, Dr. Mitchell, wrote a letter, a simple two-sentence letter, indicating that the claimant was disabled in 1997 and 1998. The judge rejected that and emphasized that he gave that decision no weight. And he italicized that. He wanted us all to know that he was giving no weight to the attending physician's disability opinion. And he based that on his conclusion, the ALJ's conclusion, that the attending physician's records didn't support his conclusion of disability. Well, I've outlined the records that were in the attending physician's file, Dr. Mitchell's, in my brief. And I won't go through them again. But he had adequate information, including two MRIs and a CT scan, which showed significant damage to this gentleman's cervical spine. And he had the opinion of a neurosurgeon who had seen the claimant on a referral from Dr. Mitchell. And that neurosurgeon had said, although it's not urgent, this guy is disabled and he's going to need a major three-level surgery, including a fusion of, I think, C4-5, C5-6 in that area of his spine. The second opinion, again, he gave it no weight. The second opinion was from a Dr. Gritska, who's an orthopedic surgeon, whose credentials are found in his reports. Dr. Gritska had seen this fellow for a different problem years earlier. We have a reference in the record that he'd seen him, I believe, in. But he didn't examine the claimant with respect to this, did he? No, no. But one of the conditions, one of the impairments that the claimant has involves his upper extremities. He saw him for that earlier. In this instance, Dr. Gritska examined the record, the entire Social Security file, and wrote an opinion letter to my predecessor, indicating that on the basis of the two MRIs and the CT scan, and the neurosurgeon's clinical findings and opinion, that he was comfortable saying that the symptoms articulated by the claimant were the very symptoms he would expect him to articulate. And he went further and said, this gentleman has all the clinical findings and all of the manifestations, as shown by two MRIs and a CT scan, not only that he's got a serious problem, but that problem is so serious, it meets or medically equals Section 104 of the Commissioner's Listings of Impairments. In his decision, the ALJ again emphasized the fact that he was giving Dr. Gritska's opinion no weight. And he did exactly that. And the reason he did it is he characterized the opinion of Dr. Gritska as a check-the-box report. He characterized it as an opinion given without any substantive evidence to back it up. He said it was conclusory and not supported by the evidence. Exactly the contrary is true. And you'll see from Dr. Gritska's reports, which are the first two medical reports in the second excerpt that I submitted, pages one through six, that he gives a very thorough analysis of the nature, cause, and severity of Mr. Mercer's cervical condition. Under several cases that this circuit has decided, several of which are cited in my brief, the most recent being the Orn versus Astru case, the ALJ simply does not have discretion to give an attending doctor's opinion no weight. It doesn't have that option. He doesn't have to give it controlling weight. If he explains with clear and convincing reasons why he's giving it less than controlling weight, that would be one thing. In this case, he just totally disregarded it and said, no weight. The same is true even though Dr. Gritska wasn't an examining physician. He did a very thorough analysis and looked at all the medical records, including those diagnostic studies,  who's in this record, other than Dr. Brett, who is experienced in cervical surgeries, in orthopedic surgeries. The doctor relied on by the commissioner was a family practitioner, also a non-examining doctor, who simply affirmed or adopted the summary of the file made by somebody working for the state agency, whose name I can't recall. Counsel, I thought that with respect to Dr. Mitchell, that the ALJ only discounted the July 2004 letter, not the whole report. Is that incorrect? No, that's not incorrect. That is correct. Okay. The disability letter. He said, I'm not going to pay any attention to that because it's not borne out by his medical records. Because it was unsigned. Wasn't that one basis for the… Yeah, he said it wasn't signed, but it was on his letterhead. Most of the other medical reports in the file aren't signed. I mean, chart notes routinely are. It wasn't a chart note, though. It was a letter. But that was a basis that the ALJ relied on. Yeah. He said it was unsigned, so he questions its authenticity. Well, that implies that Mr. Mercer went and stole a piece of letterhead and wrote the letter himself, which I think is a fairly preposterous assumption. But there's no evidence other than his suspicion that that wasn't a report from the attending doctor. Thank you. Thank you. Mr. Burdett. Good morning, Your Honors. David Burdett appearing on behalf of the Commissioner of Social Security. I agree that the issue is pretty simple and straightforward in this case. I disagree with the interpretation that Mr. Shebley would have the Court put on the doctor's opinions. To begin with, I think it's important to note for context that Mr. Mercer had to be disabled, had to prove disability in order to be entitled to benefits, that he was disabled by the end of 1998 because that was the expiration of his insured status. So with that in mind, there are no contemporaneous doctor statements saying that he is disabled. The opinion of Dr. Mitchell, if we grant that the 2004 unsigned statement that the Court properly noted was unsigned, is the opinion of Dr. Mitchell. Let's assume that that is really what Dr. Mitchell said and meant to say in 2004. His opinion of closer to the relevant date, which was already May of 2000, already a year and a half after the period by which Mercer has to establish disability, says that the claimant will be stuck with ongoing, repetitive, recurring pain in both forearms. This is going to limit his ability to work, and he should work hard at finding an appropriate occupation. So I would submit to the Court that that is ambiguous at best, and at worst, for Mr. Mercer, supports the proposition that closer to the relevant time period, Dr. Mitchell did not feel that he was disabled. He's sending him out to look for a more appropriate occupation. Limited, certainly. Limited, but not unable to perform work. The statement of Dr. Gritske. As the Court noted, Dr. Gritske saw the claimant in 1997, and that was the time at which he has to establish disability, 1997 to 1998. Now, Dr. Gritske saw him for some other ailment. As Mr. Shevely said, we don't know the full context of that. But the disability statement on which Mr. Shevely relies from Dr. Gritske is not the statement of an examining physician. It's not the statement of a treating physician. It's the statement of a physician who, several years later, I believe in 2006, is reviewing the records, and he says, I have observed patients such as Mr. Mercer typically require periodic recumbency. He says, my review of the records shows that he met or equaled the listing by June of 1998. Well, there's the statement of a non-examining physician. Another non-examining physician, and it was Dr. McDonald, whose name Mr. Shevely was looking for, the state agency physician reviewed the record and came to a contrary conclusion. So the opinions of the non-examining, non-treating reviewers were split. Mr. Shevely referred to the opinion of Dr. Brett, who was his treating physician, who was Mr. Mercer's treating physician, in 1999, an orthopedic surgeon, so a specialist, and the closest doctor that we have on the record to the time frame by which we have to establish, or the case fails, that Mr. Mercer was disabled. In 1999, I think that Mr. Shevely would assert that there's sort of an implication that Dr. Brett found him disabled, but Dr. Brett did not find him disabled in 1999. There was a question of whether to go forward with surgery, and Dr. Brett said, there is no urgency to proceed with surgery, and certainly further conservative measures can be pursued until he becomes more significantly disabled. Now, that statement implies that Mr. Mercer, at that time, 1999, has an ongoing problem that is progressive in Dr. Brett's view, that is, at some point in the future, after 1999, going to lead him to become more significantly disabled. That implies, it seems to me, that he was not significantly disabled in 1999, and was certainly not significantly disabled until after 1998, when his coverage and entitlement to benefits ran out. Well, I'm not sure I suppose he was significantly disabled, but not enough to warrant basic surgery. Perhaps. He didn't say he wasn't disabled, but more severely. Sounds like, severely, but it needs to be more severely. I want to cut his arms off. Right. That's what the context is, what he's saying. Right. No, that is correct, Your Honor, that is correct. But I submit to you that that is not a proof that the gentleman is disabled. And it is certainly not a proof that the gentleman was disabled in 1998. And, in essence, that is the case. We believe that the ALJ reasonably assumed, on the basis of comparing the medical records, I shouldn't say assumed, inferred from the medical evidence, that Mr. Mercer was not disabled as of the expiration of his coverage in 1998. Thank you, counsel. Very briefly, with regard to the onset date, you'll recall that prior coverage, his date last insured was the end of December of 1998. Two or three months before that, Dr. Mitchell was concerned about his patient's cervical problems and had an MRI done. And that MRI showed some very significant abnormalities and led Dr. Mitchell to send his patient to Dr. Brett. Dr. Brett saw him in January of 1999, reviewed the same studies done prior to December of 1998, and came to the conclusion that he needed major surgery. Although we might put it off a while, there's no question in my mind he's going to need a major surgery on his cervical spine. So he had the conditions for which Dr. Gritzka thought he was disabled under the listing well in advance of the date last insured, December 31st. Counsel, the government makes the point that Brett was not an examining physician in this particular study. Do you disagree with that? I do not disagree, Your Honor, I don't. He was not an examining physician. He'd seen him previously, but for a different problem. So, also in the record, we have Dr. Lehman's records, and I put that in there because he's the only doctor that, prior to the date last insured, gives us a good summary of this gentleman's medical problems. And in his chart note, his initial chart note, which was in 1995, I believe, he talks about a motor vehicle accident that occurred in 1987, which led to an MRI which revealed similar findings, and a course of treatment for that. So we go way back beyond the date last insured. What is the Brett opinion? Is he talking about arms or neck? Neck, primarily. He's got upper extremity symptoms, but I think Dr. Brett assumed they were from the impingement of the nerves in the neck. Okay, so to the extent that Mitchell sent him, Mitchell, on after, that was January 26, 1999, is when Brett sent her about significantly. May 2000, 2000, no change in his forearms. Is that a different aspect? He had separate conditions in his forearms, but there was no question that he was also having radicular problems into his arms and hands. The reason I'm asking, he says no change in his forearms. He'd had some surgeries. He had a de Quervain syndrome, which, as I understand it, involved some kind of a surgery or procedure at the elbow, and then he had some ongoing problems with both hands. Thank you. Thank you, counsel. The case just argued is submitted. Thank you. And last but not least, Lansford v. Astrid, Mr. Glover. You've been very patient.
judges: Graber, Fisher, Smith